**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., a private limited company organized in the country of Singapore, | |
| Plaintiff, | |
| v. | Case No.: 1:23-cv-17036 |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | **Judge Sara L. Ellis** |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.    Defendants' Ancillary Arguments Are Unrelated to the Merits of Roadget's Claims of Infringement. ................................................................................................ 2

    A.    This Court has Personal Jurisdiction over Defendants 21–23, 25, and 26. ........... 2

    B.    Email Service to These Foreign Defendants was Proper. ...................................... 3

    C.    Joinder of These Foreign Defendants was Proper. ................................................ 7

II.    Defendants' Brief Confirms Roadget Is Likely to Succeed on the Merits. ....................... 8

    A.    Roadget Has Demonstrated that It Owns the Asserted Copyrights. ...................... 8

    B.    Roadget's Copyrights Are Original, and Defendants' Designs Are Too Dissimilar to Qualify as Prior Art. ....................................................................... 10

III.    Irreparable Harm to Roadget is Likely Absent a Preliminary Injunction. ....................... 13

IV.    This Court Should Maintain the Asset Freeze, at Least Until Roadget Can Conduct Expedited Discovery into Defendants' Uncorroborated Profit Data. .............................. 16

V.    The Court Should Not Increase the Bond. ...................................................................... 17

CONCLUSION .................................................................................................................. 19

i

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*,
  No. 14-CV-1112 (VSB), 2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018) ................................5

*Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, &
  Unincorporated Ass'ns Identified on Schedule A Hereto*,
  No. 21 C 3289, 2022 WL 17176498 (N.D. Ill. Nov. 23, 2022)................................17

*Banister v. Firestone*,
  No. 17 C 8940, 2018 WL 4224444 (N.D. Ill. Sept. 5, 2018)................................16

*Barefoot Architect, Inc. v. Bunge*,
  632 F.3d 822 (3d Cir. 2011)........................................................9

*Billy-Bob Teeth, Inc. v. Novelty, Inc.*,
  329 F.3d 586 (7th Cir. 2003) ......................................................9

*Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule* "*A*",
  334 F.R.D. 511 (N.D. Ill. 2020)....................................................7

*Carol Barnhart Inc. v. Econ. Cover Corp.*,
  773 F.2d 411 (2d Cir. 1985)........................................................13

*Celgard, LLC. v. Shenzen Senior Tech. Material Co.*,
  No. 3:20-CV-130-GCM, 2020 WL 2575561 (W.D.N.C. May 21, 2020) ................................6

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000) ......................................................3

*Chrome Cherry Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*,
  No. 21-cv-05491, 2021 WL 6752296 (N.D. Ill. Oct. 20, 2021) ................................16

*Curtis 1000, Inc. v. Youngblade*,
  878 F. Supp. 1224 (N.D. Iowa 1995).................................................18

*Deckers Outdoor Corp. v. Does 1-100*,
  No. 12 C 10006, 2013 WL 169998 (N.D. Ill. Jan. 16, 2013) ................................15

*Eckes v. Card Prices Update*,
  736 F.2d 859 (2d Cir. 1984)........................................................9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)................................................................10, 11

ii

*Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis,*
     35 F.3d 1134 (7th Cir. 1994) ....................................................................18

*Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns
     Identified on Schedule A,*
     No. 20 C 4806, 2021 WL 1222783 (N.D. Ill. Apr. 1, 2021).........................5, 6

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.,*
     70 F.3d 96 (11th Cir. 1995) ........................................................................8

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP,*
     256 F.3d 548 (7th Cir. 2001) ......................................................................3

*McDaniel v. Chicago Police Dep't,*
     No. 21-cv-5842, 2022 WL 2316231 (N.D. Ill. June 28, 2022).......................7

*Monster Energy Co. v. Wensheng,*
     136 F. Supp. 3d 897 (N.D. Ill. 2015) .........................................................18

*Peng v. P'ships & Unincorporated Ass'ns Identified on Schedule A,*
     No. 21-cv-1344, 2021 WL 4169564 (N.D. Ill. Sept. 14, 2021).....................15

*Peters v. West,*
     692 F.3d 629 (7th Cir. 2012) ..................................................................8, 13

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.,*
     338 F.3d 773 (7th Cir. 2003) ......................................................................2

*Roadget Bus. Pte. Ltd. v. Schedule A Defendants,*
     No. 23-cv-17036 (N.D. Ill. Dec. 22, 2023)................................................14

*Roadget Bus. Pte. Ltd. v. Schedule A Defendants,*
     No. 24-cv-00115 (N.D. Ill. Jan. 4, 2024)..................................................14

*Roland Mach. Co. v. Dresser Indus., Inc.,*
     749 F.2d 380 (7th Cir. 1984) ....................................................................13

*The Neck Hammock, Inc v. Danezen.com,*
     No. 2:20-CV-287-DAK-DBP, 2020 WL 6364598 (D. Utah Oct. 29, 2020).............5

**Statutes**

17 U.S.C. § 410(c) ......................................................................................8, 13

17 U.S.C. § 504(b) ........................................................................................17

Copyright Act.............................................................................................3, 17

**Other Authorities**

37 C.F.R. § 202.6 .................................................................................................................9

Fed. R. Civ. P. 4(f)(3) .........................................................................................................5

Fed. R. Civ. P. 4(k)(2) .....................................................................................................1, 3

Fed. R. Civ. P. 20(a)(2) .......................................................................................................7

## INTRODUCTION

Defendants have offered for sale virtually identical copies of Roadget's registered copyright without a license. They are willful copyright infringers—and they do not even try to claim otherwise. Instead, they raise an assortment of technical arguments that are little more than distractions. Their arguments provide no basis to deny injunctive relief. Defendants are no different from the rest of the overseas online sellers peddling infringing goods who make up this Court's expansive "Schedule A" docket. Roadget respectfully requests that the Court maintain the protection put in place by its earlier TRO and enter a preliminary injunction.

## ARGUMENT

Defendants' response brief confirms that there is no serious dispute that they copied Roadget's copyrighted works. They attempt to evade the consequences of that infringement by raising an assortment of ancillary issues. For example, they contest personal jurisdiction, but as foreign infringers, they are subject to nationwide personal jurisdiction under Fed. R. Civ. P. 4(k)(2) regardless of how many infringing products they sold in Illinois. They raise "questions" about Roadget's presumptively valid copyright registrations. As to irreparable harm, Defendants are foreign sellers, and a host of questions remain as to their identities and their collaboration with one another. Without injunctive relief for the pendency of this case, there is a real likelihood of dissipation of the profits that Roadget is entitled to disgorge. Finally, as to the balance of hardships, since there is no serious dispute that copying occurred, the irreparable harm associated with Defendants' dissipation of assets far outweighs any interest Defendants may have in exploiting the fruits of their infringement.

1

I.      **Defendants' Ancillary Arguments Are Unrelated to the Merits of Roadget's Claims of Infringement.**

A.      **This Court has Personal Jurisdiction over Defendants 21–23, 25, and 26.**

Defendants concede that nearly all Defendants sold infringing products in Illinois and are consequently subject to personal jurisdiction. Five Defendants—Nos. 21, 22, 23, 25, and 26—contend that they are not subject to personal jurisdiction because they made no accused product sales to Illinois. ECF No. 61 at 6. For those five who contest jurisdiction, Roadget need only to make out a *prima facie* case to defeat a motion to dismiss for lack of personal jurisdiction, in the absence of an evidentiary hearing. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In evaluating the prima facie case, all disputes concerning relevant facts are resolved in the plaintiff's favor. *Id*. Here, the declarations Defendants have submitted raise more questions than answers, claiming in each case that they did not sell "Swag Bear" or "Poker and Skeleton Hands" (the defined "Accused Products") in Illinois, rather than affirming that they sold none of their own apparel products bearing the claimed design or a substantially similar one. *See*, *e.g.*, Zhang Xue Declaration ¶ 4, ECF No. 46-2. They also cite to no underlying documents or data to substantiate their conclusory assertions. At this stage, the dispute over whether sales have occurred in Illinois is a question of fact that should be resolved in Roadget's favor.[1]

Even if Defendants' unsubstantiated claims are correct that no sales were made to consumers in Illinois, this distinction is of no moment. Rather, the data provided pursuant to the TRO confirms an independent basis for personal jurisdiction, irrespective of whether the five Defendants in question ever made infringing sales in Illinois: Because the Defendants are in fact

---

[1] At a minimum, jurisdictional discovery would be needed to explore Defendants' assertions and, in particular, the nature and extent of their sales in Illinois.

outside the United States, they can be sued in any district under Fed. R. Civ. P. 4(k)(2). The rule allows federal courts to exercise jurisdiction over defendants who have minimum contacts with the nation as a whole, even though they lack sufficient contacts with any one state to be sued there. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001). Defendants cannot offer infringing products to consumers across the United States and then evade U.S. courts by claiming their contact with any one state are too scant.

To exercise nationwide jurisdiction over a foreign defendant, Fed. R. Civ. P. 4(k)(2) requires that (1) the claims are based on federal law, (2) no state court can exercise jurisdiction, (3) jurisdiction is consistent with U.S. Laws, and (4) jurisdiction is consistent with the Constitution. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000).

All four elements are satisfied here. Roadget's asserted claims are based on federal law (the Copyright Act). Nor can any state court exercise jurisdiction, assuming Illinois cannot—these foreign Defendants have no greater connection to other states than to this one. Jurisdiction is consistent with U.S. laws, because neither the Copyright Act nor another federal statute indicates jurisdiction would be improper. *Cent. States*, 230 F.3d at 941. Finally, the exercise of personal jurisdiction is consistent with the Constitution. This element applies the standard "minimum contacts" test, but as to the whole of the United States, not Illinois. *See Id*. at 943. The fact that Defendants sell their products in the United States—which they do not dispute—is easily enough to show minimum contacts with the nation as a whole.

### B. Email Service to These Foreign Defendants was Proper.

Defendants concede that email service of process was proper for at least some Defendants, but suggest that email service is improper for others because their entity names were allegedly listed on corresponding Temu storefronts (with the same store names) for those in the

United Kingdom. *See* Sealed Ex. A to Haoyi Chen Decl. ("Chen Decl."), ECF No. 59-2. Defendants' own screenshots confirm that Defendants' real names did not appear anywhere on their online storefronts in the United States at the time service of process was completed, Ex. A to Chen Decl., and, of course, there is no way to know for sure that store names for sellers to U.K. customers correspond to the same foreign business entities as store names for sellers to U.S. customers. Roadget simply could not have known who was behind the aliases selling products to U.S. customers. And according to the instructions on the website of the Hague Conference, service of process on an entity requires not only the mailing address but the identity of the addressee. Roadget cannot request that the China Central Authority serve an entity without providing information about who that entity is, and Defendants demonstrably did not publicize that information.

Of course, whether service of process is proper bears no weight in determining whether the court should provide injunctive relief against these foreign defendants. And the Court *already authorized* the form of service Roadget pursued—in its January 19, 2024 Temporary Restraining Order, this Court ordered that "Roadget may provide notice of the proceedings in this case to Defendants . . . by sending an e-mail to any e-mail addresses provided for Defendants by third parties." ECF No. 20 at 6. There is no reason now to reconsider that Order, as the facts available to the Court and the parties have not changed.[2] Judge Jenkins recently issued an order in another case filed by Roadget that addresses the same arguments regarding service of process that Defendants raise through the same law firm here. No. 24-cv-00607, ECF No. 31 ("Jenkins Order") at 10–11. The order recognized that service of process to Defendants by email was

---

[2] Defendants' implicit attempt to have the Court reconsider its prior rulings is procedurally improper, a waste of judicial time and resources, and borders on frivolous.

proper, irrespective of the accuracy of the addresses listed on their stores. While "Defendants'

email addresses are verified by the websites, [] their physical addresses may not be, and a longer

period of service with a TRO in place would harm Defendants." *Id.* at 10.

Regardless, email service of process is proper pursuant to Fed. R. Civ. P. 4(f)(3), which

allows service to foreign entities "by other means not prohibited by international agreement, as

the court orders." The decision whether to allow alternative means of service of process is

"committed to the sound discretion of the district court." *Advanced Access Content Sys.*

*Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y.

Sept. 30, 2018) (citation omitted). The applicable international agreement, the Hague

Convention, does not mention email service of process, and many courts have found that it does

not prohibit email service of process. *Hangzhou Chic Intelligent Tech. Co. v. P'ships &*

*Unincorporated Ass'ns Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *3 (N.D.

Ill. Apr. 1, 2021) (collecting cases); *The Neck Hammock, Inc v. Danezen.com*, No. 2:20-CV-287-

DAK-DBP, 2020 WL 6364598, at *4 (D. Utah Oct. 29, 2020) ("[T]he majority [of courts] have

concluded that a country's objection to Article 10(a) [service by mail] does not equate to an

objection to email service.").

Courts allow electronic service of process where a reasonable investigation did not

uncover valid physical addresses. *Shen*, 2018 WL 4757939, at *4. And courts have found a

reasonable investigation even where physical addresses were available. In *Hangzhou Chic*, 2021

WL 1222783, at *2, the court upheld email service of process even where the sellers had

physical address information on their websites, pointing to the epidemic of infringing goods sold

online, the unambiguous nature of defendants' infringement, and the exigent circumstances

justifying freezing defendants' assets. *Id*. "Time is of the essence with an injunction in place,"

the court pointed out, "so the Court authorized email service in order to provide [defendants] with notice as quickly as possible." *Id.* at *3. In contrast, service of process on foreign defendants like those in this case by other methods "generally takes 1–2 years to complete and is frequently unsuccessful," *Celgard, LLC. v. Shenzen Senior Tech. Material Co.*, No. 3:20-CV-130-GCM, 2020 WL 2575561, at *3 (W.D.N.C. May 21, 2020), imperiling any remedy Roadget can secure for Defendants' infringement.

Roadget performed the required reasonable investigation here by visiting each of Defendants' storefronts, closely examining their websites for contact information, and adding at least one of their products to a shopping cart for checkout. Chari TRO Decl., ECF 15-2 ¶ 8. The address information is difficult to find: it requires clicking the seller's avatar image, which does not look or behave like a link (for example, the mouse pointer does not change to a hand when hovering over it). Moreover, the mailing addresses on the Temu website are neither complete nor reliable. At the time Roadget filed this reply, the addresses for Defendants 4, 7, 8, and 12 were missing entirely, showing only the words "Chinese Mainland." Ex. 2. Defendant 21 lists what appears to be a URL link to another online store as their address. Ex. 3. And because the addresses are live on the sellers' websites, they are subject to change. Roadget later discovered that the address entries for 21 of the 26 Defendants, including many of those represented by counsel, had apparently been changed to add an entity name and detailed address that were not previously available. Roadget is uncertain whether certain detailed identifying information was added specifically to thwart Roadget's efforts to obtain email service of process. *See Hangzhou Chic*, 2021 WL 1222783, at *2 (pointing out that "it is not clear that [defendants] provided addresses on their Amazon websites at the time Plaintiffs filed their motion for email service").

Importantly, even if the Court were to conclude that service of process pursuant to the Hague Convention through the China Central Authority were required, the appropriate course would be to pursue such service, not to deny a preliminary injunction. Indeed, the frequent delays in that process only underscore the need for interim relief to ensure Defendants are not permitted to use procedural delays to abscond with the fruits of their infringement.

**C.    Joinder of These Foreign Defendants was Proper.**

Defendants' concerns about joinder likewise have no bearing on whether a preliminary injunction should be entered. Joinder is proper in this case. Under Fed. R. Civ. P. 20(a)(2), joinder is proper where the claims against the defendants arises out of the same transaction, occurrence, or series of transactions or occurrences and where there are common questions of law or fact. Courts in this district apply a "logical relationship" test. *Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 334 F.R.D. 511, 513 (N.D. Ill. 2020). The term "'occurrence' should allow plaintiffs to join in a single case the defendants who participate in" mass harm using the internet. *Id*. at 516 (finding joinder proper where the Plaintiff alleged that the defendants engaged in the similar mass counterfeiting using similar internet platforms). This is true even where the defendants "do not engage in direct communication or coordination" because it is plausible that the defendants uniformly but independently appreciate that "their ability to profit through anonymous internet stores is enhanced as their numbers increase." *Id*.; see also *McDaniel v. Chicago Police Dep't*, No. 21-cv-5842, 2022 WL 2316231, at *2 (N.D. Ill. June 28, 2022) ("The actions of multiple defendants are not required to be in concert for claims to arise out of the same transaction or occurrence so long as a logical relationship exists between the claims."). Indeed, the proliferation of products infringing Roadget's copyrights on Temu suggests that the Defendants have come to this realization.

Here, all of the Defendants opposing the preliminary injunction motion have participated in the same occurrence: the mass infringement of Roadget's copyrights on Temu. Defendants are literally interrelated because they all sell their infringing products on the same website. As a consequence of this, there will be evidentiary overlap, and most evidence as to each Defendant will have to be obtained from the same source: Temu. Further, there are significant overlapping questions of law as to each Defendant. Roadget has raised the same claims against each Defendant, and the same legal standard will apply to each Defendant. Notably, all of the Defendants opposing the preliminary injunction are represented by the same counsel (who also represent Temu sellers in other cases brought by Roadget), which further supports an inference that Defendants have coordinated their activities.

## II. Defendants' Brief Confirms Roadget Is Likely to Succeed on the Merits.

### A. Roadget Has Demonstrated that It Owns the Asserted Copyrights.

Roadget is the well-established owner of the Roadget Copyrights, and Defendants' mischaracterization of the supplemental registrations is wholly unrelated to Roadget's likelihood to succeed on the merits. First, Roadget owns the asserted copyrights. Two copyright registration certificates, already filed with the Court, show Roadget's ownership of the "Swag Bear" and "Poker Card and Skeleton Hands" designs. Sealed Compl. Ex. E–G, ECF Nos. 7-5, 7-6, 7-7. These certificates constitute "prima facie evidence of the validity of the copyright," relieving the copyright owner of the burden of proving facts underlying validity. 17 U.S.C. § 410(c); *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012).

Further, there is no dispute about ownership between Roadget and Guangzhou Shein, and copyright infringers should not be allowed to escape liability by fabricating an ownership dispute where none exists. *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) ("Where there is no dispute between the copyright owner and the transferee

8

about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke [17 U.S.C. § 204(a)] to avoid suit for copyright infringement."); *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 830 (3d Cir. 2011) ("[T]here is little reason to demand that a validating written instrument be drafted and signed contemporaneously with the transferring event."). The designer who created the design was under a work-for-hire agreement assigning works to the employer. Since the "Swag Bear" and "Poker Card and Skeleton Hands" designs were created during an employment relationship, the rights belonged to Guangzhou Shein at the time of creation. Subsequently, the rights to the design were assigned to Roadget.

"Swag Bear" and "Poker Card and Skeleton Hands" were registered with the U.S. Copyright Office under Registration Nos. VA 2-306-339 and VA 2-332-729, respectively. Sealed Compl. Ex. E–F. Since the original certificate incorrectly listed the author as Roadget Business Pte. Ltd., supplementary registrations were filed correcting the author to Guangzhou Shein International Import & Export Ltd., under Registration Nos. VA 2-351-450 and VA 2-351-326. Sealed Compl. Ex. G–H. Any additional errors on the basic registration were inadvertent clerical errors and can be easily fixed through a supplemental registration application. See U.S. Copyright Office, Compendium of U.S. Copyright Office Practices, Ch. 1802.6(D); 1802.6(F) (3rd Ed. 2021*); Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003); *Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir. 1984). Guangzhou Shein owned the works upon their creation due to a work-for-hire agreement, and Guangzhou Shein subsequently transferred ownership to Roadget by written agreement, which means Roadgets owns the copyrights.[3]

---

[3] Defendants cite to 37 C.F.R. § 202.6(d)(4)(i) to assert that supplementary registration cannot be used to change ownership of a copyright, but that is a distraction. That regulation provides, in essence, that if an original owner of a registered copyright subsequently transfers ownership to

Defendants also point to a listing on Amazon.com to "call[] into question"—without actually making an *argument* about—the originality of the Swag Bear design. ECF No. 61 at 10. But the Amazon listing in question does not establish that the *particular* design (as opposed to any of the other six color/design options on the same page, which do not have a bear on them) was available in 2021. Indeed, the earliest review for the product at the listing in question refers to a design ("the brown color block style") that does not appear to be available at all today, suggesting the colors/designs available in 2021 were different than the ones available today. Ex. A to the Declaration of Michael C. Springer-Ingram ("Springer Decl."), Ex. 1. Meanwhile, none of the reviews refer to the bear design at all.

Setting Defendants' irrelevant arguments aside, they never dispute that they copied the designs protected by the Roadget Copyrights, putting near-exact versions of Roadget's designs on clothing that they sold online. Chari TRO Decl. ¶ 7. There is no colorable argument that the copying was accidental, and Defendants do not try to make one. Roadget is likely to prevail on its claim for copyright infringement.

**B.      Roadget's Copyrights Are Original, and Defendants' Designs Are Too Dissimilar to Qualify as Prior Art.**

For a subset of the asserted copyrights, Defendants make arguments regarding originality, but those arguments miss the mark. Originality requires only a "minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). The threshold is low: as

---

another party—which it can readily do by written assignment—then the parties should not file a supplementary registration to change the identification of the original copyright claimant. But Roadget has not done that. In fact, upon confirming that Roadget's ownership arose after the original filing, Roadget has filed an application for a supplementary copyright registration to clarify that Guangzhou Shein was the owner/claimant at the time the original application was filed. Roadget is indeed the owner by written assignment, but the assignment post-dates the original application.

long as a work was independently created, it can be original even if it closely resembles other works. *Id*. The designs Defendants offer have some superficial similarities to Roadget's original copyrighted designs, but these are not enough to surmount the high bar of showing lack of originality—certainly not at this stage of the case. As the Supreme Court has pointed out, "[t]he vast majority of works make the grade quite easily." *Id*. And originality is distinct from novelty: even when the work "closely resembles" other works, as long as it was not copied, it is original. *Id*.

The work Defendants compare to "Skull Gesture" is similar only in that it is a skull with hands in a similar (but not identical) position. The shape of the skull differs: among other things, in Roadget's design, the forehead is smaller, the nose is shaped differently, the cheekbones are less distinct, and the teeth are not arranged in an apparent grin:

| Original Design | Defendants' Identified Design |
|:---:|:---:|
|  |  |

In Defendants' identified design—the one they point to challenge originality, not the one they copied—the skull is wearing sunglasses, and there are lines on the forehead that do not appear in Roadget's original design. Defendants' design reflects a similar idea, but what is copyrighted is the expression, not the idea. *Feist*, 499 U.S. at 350. Roadget has not asserted a copyright of the idea of a skull with hands—such an idea would not be copyrightable. Rather, Roadget has copyrighted this specific arrangement of lines and colors, which is one of many

manifestations of the idea of a skull with hands—and the one Defendants have undisputedly copied.

As for the "Play Game" design, none of Defendants' identified designs even appear to include the words "play" and "game" in any configuration:

| Original Design | Defendants' Identified Designs |
|:---:|:---:|
|  |  |
|  |  |
|  |  |

Whereas Defendants have failed to show copies of Roadget's original designs predating registration, Roadget has shown that Defendants virtually copied Roadget's original designs on

their apparel. One only needs to look at the designs to see that Defendants did not copy any of the designs that were already in the public domain: they copied Roadget's designs.

Moreover, the copyright certificates Roadget has already provided to the Court provide "prima facie evidence of the validity of the copyright," relieving the copyright owner of the burden of proving facts underlying validity. 17 U.S.C. § 410(c); *Peters*, 692 F.3d at 632; *Carol Barnhart Inc. v. Econ. Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985). Defendants infringed Roadget's registered copyrights, and they have failed to show any problem with the validity of the copyrights.

## III. Irreparable Harm to Roadget is Likely Absent a Preliminary Injunction.

Because Defendants are small merchants based abroad who operate behind online aliases, they can easily abscond with the fruits of their infringement and reopen a new store under a new alias, leaving Roadget without a remedy and irreparably harmed. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (explaining that a damages award may be inadequate if damages are "unobtainable from the defendant," and that harm that "cannot be prevented or fully rectified by the final judgment after trial" is irreparable). That concern is not speculative. It is the same real threat this Court confronts regularly in "Schedule A" cases, and these Defendants are no different from the parade of foreign online infringers in those cases.

Defendants frame Roadget's prioritization of addressing the largest pool of copyright infringement at issue in this case before shifting its efforts to the singular non-Temu seller on eBay as a "proxy" attack against Temu, a party completely unrelated to the merits of this suit. Roadget is in the process of serving the Defendant using eBay for their online store after it addresses the overwhelming amounts of infringement by the other *twenty-six* defendants on Temu's platform.

13

Defendants claim that Roadget filing multiple TROs against the same Defendants for different infringing products constitutes an abuse of process. Not so. Roadget's repeated requests for relief are a reflection of Defendants' repeated infringement of different Roadget-owned copyrights. While a TRO freezing two Defendants' assets may already have issued in connection with different copyright claims, the existence of the prior TRO in connection with those claims does not eliminate the need for relief as to these ones, particularly where the asset freezes in question may be (and have been) modified and limited to revenues associated with particular products.[4] Defendants' complaints reflect the apparent view that, once they have been enjoined for infringing *one* Roadget copyright, they should be permitted to infringe *every other* Roadget copyright. There is no abuse in bringing repeated suits against a Defendant that engages in repeated infringement.

In any event, Defendants' baseless accusations should not detract from the purpose of Roadget's suit against them: these are foreign sellers that conceal themselves behind multiple storefronts, entity names, and addresses to avoid liability for their infringing products, and they appear to be connected and coordinated in ways that will likely become clearer as discovery in this case progresses. For example, the same lawyers keep appearing on behalf of apparently unrelated entities across multiple suits, often submitting briefs as an amicus likely to represent the defendants before the identities of the Schedule A defendants are revealed. *See Roadget Bus. Pte. Ltd. v. Schedule A Defendants*, No. 23-cv-17036 (N.D. Ill. Dec. 22, 2023); *Roadget Bus. Pte. Ltd. v. Schedule A Defendants*, No. 24-cv-00115 (N.D. Ill. Jan. 4, 2024). And in all of these cases, when Roadget received data from Temu regarding the defendant sellers, Defendants'

---

[4] Since certain Defendants were also sued in other Schedule A cases in this district for selling goods that infringe upon additional Roadget-owned copyrights, Roadget reserves the right to request a modification of the asset freeze to account for any developments among all Defendants.

14

counsel was already listed as the point of contact for certain sellers—and they were assembled within days of service of the TRO. Springer Decl. ¶¶ 7–9.

To be sure, Defendants' decision to appear in this action (and others initiated by Roadget) and their representation by counsel collectively is somewhat unusual for Schedule A cases. But their appearance is not a reason to deny the protection of a preliminary injunction, nor does it protect Roadget against the dissipation of assets. If anything, Defendants' appearance proves that the TRO worked. If the Court does not continue the protections of the TRO by entering a preliminary injunction through the pendency of the case, Defendants can dissipate the assets and disappear. All bets are off.

Indeed, the concern that foreign online sellers can disappear with the proceeds of their infringement and leave plaintiffs without a remedy is raised and taken seriously in most "Schedule A" cases, and it is a basis for the injunctions granted frequently in those cases. *See*, *e.g.*, *Deckers Outdoor Corp. v. Does 1-100*, No. 12 C 10006, 2013 WL 169998 (N.D. Ill. Jan. 16, 2013); *Peng v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 21-cv-1344, 2021 WL 4169564 (N.D. Ill. Sept. 14, 2021). This concern is so frequently the basis for granting injunctive relief in this Court that Judge Pacold of the Northern District of Illinois has on her website a template titled Proposed Temporary Restraining Order for "Schedule A" cases which reads: "[I]n the absence of an *ex parte* Order, Defendants could and likely would move any assets from accounts in financial institutions under this Court's jurisdiction to off-shore accounts."

Finally, the fact that Defendants stopped selling the accused products does not weigh against a finding of irreparable harm. Defendants did not stop selling these products voluntarily—in fact, they did not even take action themselves to stop. The product listings were

15

removed by Court order. And these were just the listings Roadget identified in Schedule A to the Complaint; there may yet be other infringing listings. Defendants' forced cessation of infringement does not count in their favor.

## IV. This Court Should Maintain the Asset Freeze, at Least Until Roadget Can Conduct Expedited Discovery into Defendants' Uncorroborated Profit Data.

Defendants do not dispute that they are willful infringers: they merely object to the consequences of their infringement. There appears to be no question, then, that Defendants' infringement of Roadget's copyrights should be enjoined for the pendency of the case. Their arguments as to the balance of hardships relate to a secondary issue: the scope of the asset freeze. The Court already reduced the asset freeze put in place in its earlier Temporary Restraining Order to 100% of Defendants' assets attributable to sales of infringing products. ECF No. 63. Roadget asks that this remain in place pending expedited discovery to explore Defendants' numerous factual assertions. Judge Jenkins also addressed these concerns for similarly situated Defendants in her Order for another Schedule "A" case filed by Roadget. Jenkins Order at 8. The Court agreed that an asset freeze was required, as "[a]ll Defendants [] appear to be based in China, and some Defendants have modified the presence of their online storefronts by removing the allegedly infringing products." *Id.* The same concerns are present before the Court in this case.

The asset freeze Defendants challenge is a standard step in Schedule A copyright cases like this one, included in Judge Pacold's template for proposed orders. *See Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018); *Chrome Cherry Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-05491, 2021 WL 6752296, at *2 (N.D. Ill. Oct. 20, 2021). And Defendants have provided uncorroborated statements as to their profits, with no account of how revenue or costs were calculated. That is

16

not sufficient. In an accounting for profits under the Copyright Act, the burden is on Defendants to prove their costs. 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."). The party seeking to exempt assets from an asset freeze carries the burden of presenting "documentary proof that particular assets are not the proceeds of" of the unlawful activity. *Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498, at *4 (N.D. Ill. Nov. 23, 2022). Defendants' uncorroborated and self-serving statements do not constitute documentary proof.

Any concerns raised by Defendants and their ability to continue their day-to-day operations are fully addressed by reduced asset freeze already in place. At a minimum, therefore, Roadget requests that the reduced asset freeze remain in place at least until Roadget can conduct diligent discovery into Defendants' vague assertions regarding assortment of factual assertions of unknown veracity.[5] But quite apart from its decision on the precise scope of the asset freeze, this Court should enter a preliminary injunction as to the infringement.

## V.    The Court Should Not Increase the Bond.

Defendants ask that the Court set the bond individually for each Defendant to reflect their respective sales revenue for the accused products with a baseline of $5,000 for each Defendant. District courts have wide latitude in setting an appropriate bond, although the Seventh Circuit

---

[5] Defendants assert that they were approached, outside the presence of counsel, with an offer related to these Schedule A proceedings. That is not counsel's understanding of the settlement process to date. Settlement communications between counsel for Roadget and these stores are attached in their entirety hereto, and they contain no such suggestion. Springer Decl. Ex. B.

does counsel to "err on the high side." *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141-42 (7th Cir. 1994) ("[I]t is within the district court's discretion to increase or decrease the amount as necessary…"). But there is less necessity for a large bond when, as here, the plaintiff's likelihood on the success on the merits is "substantial." *See Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1280 (N.D. Iowa 1995) (finding plaintiff's "likelihood of success on the merits to be substantial" and "thus lessening the necessity to provide a bond at the extreme upper limit of estimated damages."). Here, Roadget has demonstrated a high likelihood of success based on Defendants' infringing products that are substantially similar—and in some cases, exact copies—of Roadget's valid copyrights.

"The burden of establishing the bond amount rests with the party to be restrained…" *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 911 (N.D. Ill. 2015). Defendants do not explain what harm they are attempting to prevent with their bond proposal, which is tied to the amount of frozen assets and an arbitrary $5,000 minimum per Defendant. Defendants do not need a bond at all to ensure that they would receive their frozen assets if they were to prevail on the merits: in that event, lifting the asset freeze would return 100% of their funds. Defendants have thus failed to meet their burden to establish the need for a bond greater than $10,000.

## **CONCLUSION**

Roadget respectfully requests that this Court enter a preliminary injunction.

Dated: March 14, 2024

Respectfully submitted,

*/s/ Steven J. Horowitz*
Steven J. Horowitz
Matthew D. Binder
Deepa A. Chari
Michael C. Springer-Ingram
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
shorowitz@sidley.com
mbinder@sidley.com
dchari@sidley.com
mspringeringram@sidley.com

*Counsel for Plaintiff Roadget Business Pte. Ltd.*

19